**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eleanor Jo Darrington,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>Defendant. | No. CV11-0953-PHX-DGC<br><br>**ORDER** |

In August 2007, Plaintiff protectively filed an application for disability insurance benefits under Titles II and XVI of the Social Security Act, claiming a disability onset date of January 1, 2008. Doc. 20, at 2. The application was denied initially on March 12, 2008, and again upon reconsideration on September 5, 2008. Tr. 71, 78. A hearing before an administrative law judge ("ALJ") was held on November 20, 2009. Tr. 20-51. The ALJ issued a decision on January 22, 2010, finding that Plaintiff was not disabled because she could perform her past work. Tr. 56-66. This decision became Defendant's final decision when the Social Security Administration Appeals Council denied review. Tr. 1-5. Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court will affirm Defendant's decision.

**I.    Background.**

In December 2007, Plaintiff was examined by Dr. Neil McPhee. Tr. 208. Plaintiff complained of high blood pressure, thyroid disease, severe sclerosis, and right knee

arthritis. *Id.* The examination revealed high blood pressure, severe scoliosis in the mid-spine, tenderness in the shoulders and neck, and a normal range of motion in the extremities and reflexes. Tr. 209. Dr. McPhee opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and walk about four hours in an eight-hour day; sit without limitations; occasionally kneel, crouch, crawl, and climb ramps and stairs; reach and stoop; and could never climb ladders, ropes, or scaffolds. *Id.* Plaintiff needed to avoid heights and moving machinery. *Id.* These ratings were compatible with sedentary work. *Id.*

In January 2008, Plaintiff's X-rays revealed dramatic scoliosis and osteoporosis. Tr. 218.

In March 2008, Dr. D. K. Varma, a nonexamining state agency physician, reviewed the medical evidence and completed a form agreeing with Dr. McPhee's assessment. Tr. 222-28. Dr. Varma found that Plaintiff's pain allegations were credible. Tr. 226.

On August 9, 2008, Dr. Keith Cunningham performed a consultative examination of Plaintiff. He observed Plaintiff as she walked to and from the examination room independently and in heels. Tr. 233-34, 238-39. She was able to remove her shoes and walk up and down the hallway without difficulty. Tr. 234, 238. She stood on her heels and toes on each leg independently, and was able to squat and stand, though she did report some knee pain. *Id.* Plaintiff's shoulders, elbows, wrists, fingers, and thumbs demonstrated a preserved range of motion. *Id.* Dr. Cunningham assessed Plaintiff with severe scoliosis and various deformities of the knees with a history of right patella surgery. *Id.* His report provided ratings consistent with sedentary work. Tr. 235-37.

Later in August 2008, Dr. Thomas Disney, a nonexamining state agency physician, performed a physical residual functional capacity assessment. Dr. Disney affirmed that Plaintiff could perform light work with no climbing of ladders, ropes, or scaffolds; no more than occasional climbing of ramps or stairs, kneeling, crouching, or

crawling; frequent balancing and stooping, and avoidance of concentrated exposure to extreme heat or cold, wetness, and hazards. Tr. 245-48. Dr. Disney noted that Plaintiff was only partially credible as to the severity of the symptoms alleged because the objective medical evidence did not corroborate her allegations. Tr. 249.

A September 2008 X-ray revealed wedging in certain parts of the vertebrae, moderate to severe scoliosis in the lower thoracic spine, no infiltrative or destructive processes, no paraspinous abnormalities, and old partial osteoporotic fractures at certain parts of the vertebrae. Tr. 256-59. Otherwise, the lumbar, thoracic, and cervical spine appeared intact. *Id.*

In October 2008, Plaintiff complained of back pain to treating physician Dr. Edward Song. Tr. 253. Dr. Song's records indicate that Plaintiff was working for the post office in 1985 when she was thrown forward and had an episode of mechanical low back pain. *Id.* She complained of constant neck, right shoulder, mid back, and low back pain that grows worse with sitting. *Id.* She has also had surgery on both knees. *Id.* Dr. Song diagnosed Plaintiff with scoliosis, osteoporosis, and pathologic facture to the T6 and T7 vertebrae. In his discussion, Dr. Song noted that Plaintiff had a complicated problem because of her apparently severe osteoporosis, scoliosis, degenerative disc disease, and compression deformities in her mid-thoracic spine combined with her smoking habit. Tr. 254. Dr. Song explained that with osteoporosis, surgical deformity correction is not possible due to severe risk of instrumentation failure. *Id.* Surgery would most likely worsen Plaintiff's problems and would not hold within her osteoporotic bone. *Id.* Dr. Song explained that Plaintiff's compression injuries are healed and recommended physical therapy and interventional pain management rather than surgery. *Id.*

Plaintiff began physical therapy in July 2009. She stated that her disability onset date was one year ago. Tr. 317. During her initial evaluation on July 30, 2009, Plaintiff complained of constant pain that prevented her from sleeping and using her right side.

*Id.* She explained that her doctor wanted her to try physical therapy before surgery. *Id.* After several therapy visits, Plaintiff began tolerating more exercises, feeling less sore and tense, and improving her range of motion in her right shoulder. Tr. 307-16.

Plaintiff's treating physician, Dr. Anikar Chhabra, noted that her motion was improving with physical therapy. Tr. 347. At Plaintiff's August 5, 2009 appointment, she complained of ongoing pain in her neck, numbness in her right forearm, and aching in her right shoulder. Tr. 339. She reported that her pain "cannot be ignored for any length of time but she is still able to go to work and participate in social activities." *Id.* Dr. Chhabra stressed the importance of Plaintiff's follow up with Dr. Nagul to rule out the possibility of cancer. Tr. 342-43. Dr. Chhabra ordered more lab studies, encouraged continuation of physical therapy, prescribed a trial sample of Ambien to assist with sleep, and affirmed Dr. Song's conclusion that Plaintiff was not a surgical candidate. Tr. 343-44.

On October 2, 2009, Plaintiff had a follow-up visit with Dr. Jonathan Carlson at Arizona Pain Specialists. She had undergone a right-sided C2-C6 medial branch block procedure from which she experienced approximately 50% pain relief. Tr. 322. Plaintiff reported that her pain was "a lot better," though she continued to experience a "pulling toward the right side" and cramping in her midback. *Id.* Plaintiff also reported shoulder pain and right hand and wrist pain due to carpal tunnel syndrome. *Id.*

On October 21, 2009, a motor nerve, sensory nerve, and needle EMG examination revealed normal nerve testing of the arms and no electrophysiological evidence of neuropathy, myopathy, or radiolopathy. Tr. 367-68.

On November 20, 2009, Plaintiff had a hearing before the ALJ. Tr. 22-51. Plaintiff testified that she stopped working on a regular basis due to pain in her neck, back, hands, and fingers. Tr. 31, 36. She explained that her hands would lock, she would experience numbness, and she would not be able to hold anything. Tr. 41. She testified that she was living with her adult grandchildren who helped her with grooming, and that

she was laying down most of the time. Tr. 42, 45.

Dr. George Bluth, a vocational expert, also testified at the November 20, 2009 hearing. Tr. 46. The ALJ asked Dr. Bluth a hypothetical question: whether an individual in the condition that Dr. Disney reported in Plaintiff's residual functional capacity assessment (Tr. 244-51) would be able to do any of Plaintiff's past work. Tr. 47-48. Dr. Bluth responded that an individual with Plaintiff's condition could do the past work, with the exception of work as a driver and recreational instructor. Tr. 48. Dr. Bluth then testified that an individual limited to occasional reaching, handling, finger, and feeling could not do those jobs. *Id.*

## II. Standard of Review.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* To determine whether substantial evidence supports Defendant's decision, the Court must review the administrative record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support Defendant's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

## III. Analysis.

Plaintiff claims that (1) the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so; and (2) the ALJ erred by relying on the opinions of Dr. Cunningham, a one-time consultative examiner, and Dr. Disney, a non-examining state agency reviewer. Plaintiff asks the Court to remand the case for a determination of disability benefits.

### A. Weight Accorded to Plaintiff's Symptom Testimony.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1037 (citations omitted).

In the first step, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 63. In the second step, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment." *Id.* Given that there is no dispute that Plaintiff's impairments could reasonably produce the alleged symptoms, and because there is no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for his adverse credibility finding. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Plaintiff claims that the ALJ erred in the second step by rejecting her testimony without providing clear and convincing reasons for doing so. Doc. 20, at 16. She argues that it is inadequate under the "clear and convincing" standard for the ALJ to discuss the medical evidence without explaining how that evidence undercut her symptom testimony. Doc. 20, at 13-14, 18.

Initially, Plaintiff and Defendant both agree that the ALJ committed a clear error

by citing evidence that does not exist. Doc. 20, at 18; Doc. 21, at 11, n.7. The ALJ states in his decision that "[t]he vocational expert also testified at the hearing that there is nothing in the medical record regarding treatment notes or objective findings to support a greater limit that [sic] the residual functional capacity." Tr. 65. The vocational expert, Dr. Bluth, did not give such testimony at Plaintiff's hearing, yet the ALJ "finds this [nonexistent] testimony credible, and further finds the claimant's testimony regarding extreme restrictions of activities of daily living . . . is not credible. Indeed, the claimant simply appears to have little incentive to work." *Id.* The Court concludes that this reason, out of several that the ALJ offers to support his adverse credibility finding, is invalid. It must determine whether the ALJ's reliance on this reason was harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (applying a harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1197). The relevant inquiry for the Court is not whether the ALJ would have made a different decision absent the error, but whether the ALJ's decision remains legally valid despite the error. *Id.*

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible because the medical record demonstrated that Plaintiff's symptoms did not prevent her from performing basic work functions. Tr. 63. In support of his conclusion, the ALJ cited the January 2008 X-rays that showed dramatic scoliosis and osteoporosis in the dorsal spine but a normal cervical spine, and the August 2008 X-rays that showed no infiltrative or destructive processes, no paraspinous abnormalities, no acute lesions, and a normal thoracic cord. *Id.* at 63-64. In October 2009, a motor nerve, sensory nerve, and needle EMG examination showed no

electrophysiological evidence of neuropathy, myopathy, or radiculopathy. *Id.* at 64. The ALJ also considered the reports of Drs. Cunningham and Disney, who both concluded that Plaintiff would be able to perform light work with some limitations. *Id.* at 64-65. He noted that Dr. Disney found Plaintiff only "partially credible" because the objective medical evidence did not corroborate her allegations regarding the extent of her restrictions. *Id.* at 65.

Plaintiff's medical record alone is an insufficient basis for discrediting her testimony. This Circuit has held that an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of the pain. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Here, the ALJ did not rely solely on the objective medical record. He also considered inconsistencies in Plaintiff's testimony and her statements to her treating and evaluating doctors. *See Moisa*, 367 F.3d at 885 (listing conflicts between a claimant's testimony and her conduct, or internal contradictions in testimony, as examples of findings that would allow a reviewing court to conclude that an ALJ rejected the testimony on permissible grounds). When she began physical therapy in July 2009, Plaintiff admitted that her symptoms began a year before, not in 2005 as she had initially alleged. Tr. 64. She claimed that her doctor wanted her to try physical therapy before surgery, but Dr. Song had concluded that Plaintiff was not a surgery candidate. *Id.* Dr. Chhabra, Plaintiff's treating physician, observed that Plaintiff's motion improved with therapy, despite Plaintiff's testimony at the hearing that physical therapy caused her to "cramp up." *Id.* Plaintiff had also reported a history of osteoporosis, but did not report ongoing muscoskeletal pain, and had stopped taking Fosamax without requesting or requiring new medication for her back and joints. *Id.*; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Another such form of evidence [sufficient to discredit an allegation of disabling excess pain] is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."). At an August 5, 2009 examination with

Dr. Carlson, Plaintiff reported that "[h]er pain cannot be ignored for any length of time but she is still able to go to work and participate in social activities." Tr. 64, 339. This statement contradicts Plaintiff's testimony that she had stopped working on a regular basis due to her pain and that her hands would lock, she would experience numbness, and she would not be able to hold anything. Tr. 31, 36, 41. These are not the kinds of general findings that this Circuit has held insufficient. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ specifically identified the testimony that is not credible and the evidence that undermines Plaintiff's complaints. *Id.*

In light of Plaintiff's medical record and the inconsistencies in her statements, the ALJ concluded that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible. The Court finds that despite the ALJ's clear error in citing to nonexistent testimony, the ALJ's decision remains legally valid. The ALJ has put forth other substantial evidence to support his conclusion on Plaintiff's credibility. The error is harmless because it does not negate the validity of his conclusion. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve the Plaintiff's symptom testimony, and those findings are supported by substantial evidence in the record, the Court will not second-guess that decision. *See Bowen*, 885 F.2d at 604. The Court concludes that the ALJ did not err in rejecting Plaintiff's symptom testimony.

**B.  Weight Accorded to Consultative and Non-Examining Physicians.**

Plaintiff argues that the ALJ erred by relying on the opinion of a one-time consultative examiner, Dr. Cunningham, and an assessment form completed by a non-examining state agency reviewer, Dr. Disney. Doc. 20, at 21. The ALJ gave "great weight" to these opinions in reaching his conclusion that Plaintiff had the residual functional capacity to perform light work. Tr. 65.

The Court disagrees with Plaintiff's assertion that Defendant may rely on the opinions of non-examining physicians only in cases where those physicians testified at a

hearing and were subject to cross-examination. Doc. 20, at 24. While this Circuit held in *Morgan v. Commissioner of Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999), that "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it," it did not specify that testifying was a mandatory component. The Circuit has allowed opinions of non-treating or non-examining physicians as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff argues that Dr. Cunningham's report was not substantial evidence because the report does not evince a review of Plaintiff's background medical records, including the X-rays showing that she had scoliosis. Doc. 20, at 22; Tr. 218. Defendant responds that it is irrelevant whether Dr. Cunningham reviewed the X-rays because Plaintiff does not argue that they would have changed his opinion. Doc. 21, at 14. Dr. Cunningham's August 9, 2008 report lists scoliosis as part of Plaintiff's past medical history, and a physical examination confirmed that Plaintiff had "fairly dramatic scoliosis." Tr. 233-34. The Court finds that the report meets the standards for consultative examinations because the report does take into account Plaintiff's medical history. *See* 20 C.F.R. § 404.1519n(c)(3)-(4) (stating that a complete consultative examination "should include" a "description, and disposition, of pertinent 'positive' and 'negative' detailed findings based on the history, examination and laboratory tests related to the major complaint(s)" and the "results of laboratory and other tests (e.g., X-rays)"). The Court disagrees with Plaintiff's argument that the ALJ's reliance on Dr. Cunningham's report was "egregious" (Doc. 20, at 22) since Plaintiff has not alleged or shown inconsistencies between Plaintiff's medical record and Dr. Cunningham's findings.

Plaintiff also argues that the ALJ improperly relied on Dr. Disney's assessment because he was a non-examining physician. Doc. 20, at 23. A non-examining

physician's assessment may properly support a decision when other independent evidence supports those assessments. *See Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999). Although Dr. Disney did not independently evaluate Plaintiff, he reviewed the medical record and gave an assessment that is consistent with Dr. Cunningham's. *Compare* Tr. 241-42 *with* Tr. 245-51 (both concluding that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry approximately ten pounds, stand or walk for at least two hours, and sit for approximately six hours in a work day). Dr. Disney listed demineralization of the dorsal spine as evidence in support of his conclusions (Tr. 246), which echoes the results of Plaintiff's January 2008 X-rays (Tr. 218). The Court disagrees with Plaintiff's argument that Dr. Disney did not give an explanation for how the medical evidence failed to corroborate her symptom testimony. Doc. 20, at 23; Tr. 249 ("Medical objective evidence does not corroborate claimant's allegations."). Dr. Disney noted Plaintiff's scoliosis and deformities in her knees, but weighed this evidence against other evidence that Plaintiff walked without difficulty, could sit 6-8 hours, and did not need an assistive device. Tr. 246.

Drs. Disney's and Cunningham's assessments are consistent with other evidence in the record, including Plaintiff's X-rays and earlier assessments by Drs. McPhee and Varma. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 404.1527(d)(4). The ALJ gave great weight to Drs. Cunningham's and Disney's opinions because they "agree with the objective findings in the record." Tr. 65. The Court concludes that the medical record supports Drs. Cunningham's and Disney's opinions and that the ALJ reasonably found that those opinions were entitled to great weight.

**IT IS ORDERED:**

1. Defendant's decision denying disability insurance benefits (Tr. 59-66) is **affirmed**.

2. The Clerk is directed to terminate this action.

Dated this 11th day of January, 2012.

*David G. Campbell*
United States District Judge